UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD MARSHALL, | NO. EDCV 11-02034 AGR |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

    Plaintiff Richard Marshall filed this action on January 4, 2012. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on January 13 and 18, 2012. (Dkt. Nos. 8, 9.) On September 4, 2012, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

    Having reviewed the entire file, the court remands this matter to the Commissioner for proceedings consistent with this opinion.

## I.

## PROCEDURAL BACKGROUND

Marshall filed applications for supplemental security income and child's disability benefits on May 20 and 23, 2008, respectively. Administrative Record ("AR") 10, 121-27. In both applications, he alleged a disability onset date of January 1, 2001. AR 10, 121, 125. The applications were denied initially and upon reconsideration. AR 10, 59-62. Marshall requested a hearing before an Administrative Law Judge ("ALJ"). AR 79-81. On May 17, 2010, the ALJ conducted a hearing at which Marshall and his mother testified. AR 41-58. On June 17, 2010, the ALJ issued a decision denying benefits. AR 7-16. On November 29, 2011, the Appeals Council denied Marshall's request for review. AR 1-5. This action followed.

## II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.
# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

## B. The ALJ's Findings

The ALJ found "no evidence of any functionally limiting physical or mental impairment at age 22 for the childhood disability case." AR 12.

The ALJ found "no evidence of a functionally limiting physical impairment in [the supplemental security income] case." *Id.* Marshall has the following severe mental impairments: polysubstance abuse and substance induced psychotic disorder. *Id.* Marshall's impairments do not meet or equal a listing. AR 12-13. He has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following nonexertional limitations: "the work should be unskilled, entry level, object oriented and non-public." AR 13. Marshall has no past relevant work. AR 15. There are jobs that exist in significant numbers in the national economy that he can perform, such as lens block gauger and table worker. AR 15-16.

## C. Treating Psychiatrist's Opinion

Marshall contends the ALJ did not properly consider the treating psychiatrist's opinion.

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue,* 495 F.3d 625, 631 (9th Cir. 2007). To reject an uncontradicted opinion of a treating physician, an ALJ must state clear

and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When a treating physician's opinion is contradicted by another doctor, as here, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn,* 495 F.3d at 632 (citations and quotation marks omitted). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart,* 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

Dr. Myint is Marshall's treating psychiatrist since May 12, 2008. AR 198. The record contains a Mental Disorder Questionnaire form, dated June 19, 2008, a Mental Disorder Questionnaire form, dated September 8, 2008, a Work Capacity Evaluation (Mental), dated January 26, 2010, and treatment notes from June 12, 2008 through April 23, 2010. AR 195-200, 238-41, 249-55, 287-99, 301-02, 304-08.

In the June 2008 Mental Disorder Questionnaire form, Dr. Myint stated that Marshall was hospitalized in May 2008 for making threats and suicidal statements.[1] AR 195. Dr. Myint diagnosed schizoaffective disorder and stated that Marshall is taking Risperdal and Depakote. AR 197. Marshall reported auditory hallucinations, mood swings and previous suicide attempts. AR 195. He thinks the neighbors are trying to poison him by giving him lemonade with bleach. AR 195, 197. Marshall reported that he drinks socially and has never used drugs.

---

[1] The hospital records indicate Marshall was on a 5150 hold. AR 272. He had paranoid delusion and auditory hallucination, and required a Haldol injection. *Id.* He was treated with Risperdal and Depakote, and was discharged four days later without auditory or visual hallucinations, and without suicidal or homicidal ideations. *Id.* He was diagnosed with bipolar disorder not otherwise specified, and alcohol and marijuana abuse. *Id.* His GAF was 40. *Id.* His mood was labile, and his thoughts were tangential and disorganized. AR 276.

4

AR 195. In the September 2008 Mental Disorder Questionnaire form, Dr. Myint reported that Marshall acknowledged using drugs when he was "much younger for about four years." AR 238. Dr. Myint noted that Marshall "is a very poor historian and his reports keep changing." *Id.* Otherwise, the September 2008 Mental Disorder Questionnaire form is the same except that Marshall was taking Risperdal, Lexapro and Lamictal. AR 240.

In the January 2010 Work Capacity Evaluation form, Dr. Myint found that Marshall had "marked" limitations in 13 out of 16 functional areas, and "extreme" limitations in working in coordination with or in proximity to others without being distracted by them, interacting appropriately with the general public, and getting along with co-workers or peers without distracting them or exhibiting behavioral extremes. AR 301-02. The term "marked" was defined as a serious limitation such that the ability to function is severely limited but not precluded. The term "extreme" was defined as no useful ability to function. AR 301. Dr. Myint anticipated that Marshall would be absent from work three days or more per month due to his impairments or treatment. AR 302.

The treatment notes contain a psychiatric evaluation performed by Dr. Myint on June 12, 2008. AR 199-200. Marshall reported that he had experienced all street drugs and had been clean for one year except for marijuana and alcohol. AR 199. Dr. Myint diagnosed schizoaffective disorder and polysubstance dependence. AR 200. The mental status examination indicated Marshall's behavior was intrusive, his speech was pressured, and his mood was expansive. *Id.* His perceptual process, thought process, thought content, and memory were within normal limits. *Id.* Dr. Myint assessed a Global Assessment of Functioning ("GAF") of 50.[2] *Id.* On August 14, 2008 Marshall

---

[2] A GAF score between 41 and 50 indicates serious symptoms (e.g., suicidal ideation, obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable

5

reported, "I'm depressed sometimes [and] crying a lot." AR 252. On August 29, 2008, he reported he was "doing well" but Dr. Myint noted he was mumbling and his affect was restricted. AR 251. In October 2009, Marshall reported that he was "doing good" but Dr. Myint noted an expansive affect. AR 288. In November 2009, Marshall reported he was doing fine, but his mother reported he was irritable at times. AR 287. On April 23, 2010, the most recent treatment note, Marshall reported, "I'm doing good." Dr. Myint found his mood expansive and continued to diagnose schizoaffective disorder. AR 304.

The ALJ found that the Work Capacity Evaluation "has no persuasive value whatsoever." AR 14. He found the form was "the typical exaggerated, indulgent, accommodative form from County Mental Health workers." Specifically, if Marshall were markedly limited in his ability to be aware of normal hazards and take appropriate precautions he "should be confined or at least under the care of a guardian" instead of being left alone, "as he is every work day when his mother and sister, with whom he lives, are absent at their work." AR 14, 302. The ALJ noted that "actual mental health treatment is so minimal" and that use of the same medications for long periods of time raised "inferences of medication effectiveness and toleration." AR 14. The ALJ further noted that the most recent treatment records indicated no psychotic processes. *Id.*

Marshall contends the ALJ rejected Dr. Myint's opinions without setting forth specific and legitimate reasons for doing so. Although the ALJ characterized Marshall's mental health treatment as "minimal," Marshall has consistently been treated since his 5150 hold with Risperdal, which is used to treat symptoms of schizoaffective disorder. Marshall testified that he does not "have insurance to go see any other treatment or doctors." AR 52.

---

to keep a job). Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) ("DSM IV TR").

The record does not contain the opinion of an examining physician. The ALJ relied upon the opinion of a State Agency psychiatric consultant who did not examine Marshall and reviewed limited records available at that time. The state agency consultant assessed mild to moderate limitations in understanding and remembering tasks, sustaining concentration and persistence, and socially interacting with the general public, and mild limitations in adapting to workplace changes. AR 209-10. Dr. Williams opined that Marshall could perform non public unskilled work, and before 12 months have elapsed, he should be non severe in the absence of substance abuse. AR 15, 224.

The ALJ based his RFC on this assessment, which clearly conflicted with Dr. Myint's opinion. "'The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician.'" *Ryan v. Comm'r, Soc. Sec. Admin.*, 528 F.3d 1194, 1202 (9th Cir. 2008) (citation omitted; emphasis in original). A non-examining physician's opinion may serve as substantial evidence when it is supported by other evidence in the record and is consistent with it, which is not the case here. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Thomas*, 278 F.3d at 957.

The ALJ did not provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Myint's opinions. Remand is appropriate for the ALJ to reconsider Dr. Myint's opinions and order a consultative examination if appropriate.

### D. **Vocational Expert Testimony**

Marshall argues that the ALJ erred in failing to obtain vocational expert testimony regarding his ability to perform other work in light of his "significant non-exertional limitations." JS 17.

At step five, the Commissioner bears the burden of demonstrating there is other work in significant numbers in the national economy the claimant can do.

*Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). If the Commissioner satisfies this burden, the claimant is not disabled and not entitled to disability benefits. If the Commissioner cannot meet this burden, the claimant is "disabled" and entitled to disability benefits. *Id.*

"There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2" (the "grids"). *Id.* "Where a claimant suffers only exertional limitations, the ALJ must consult the grids. Where a claimant suffers only non-exertional limitations, the grids are inappropriate, and the ALJ must rely on other evidence. Where a claimant suffers from both exertional and non-exertional limitations, the ALJ must consult the grids first." *Id.* at 1115. The grids are inapplicable when "a claimant's non-exertional limitations are sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations."[3] *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007) (citation and quotation marks omitted). "Nonexertional impairments may or may not significantly narrow the range of work a person can do." Social Security Ruling 83-14.[4] The ALJ may rely on the grids alone "only when the grids accurately and completely describe the claimant's abilities and limitations." *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999) (citation and quotation marks omitted); *see also*, 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 200(e). The testimony of a vocational expert is

---

[3] Nonexertional limitations include "postural and manipulative limitations such as difficulty reaching, handling, stooping, climbing, crawling, or crouching." *Lounsburry*, 468 F.3d at 1115; see also 20 C.F.R. § 404.1569a(c)(vi).

[4] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

8

required where nonexertional limitations significantly limit the range of work a claimant can perform. *Tackett*, 180 F.3d at 1102.

The ALJ found that Marshall could perform a full range of work at all exertional levels, but the work should be unskilled, entry level, object oriented and non-public. AR 13. The ALJ noted that the nonexertional limitations "have little or no effect on the occupational base of unskilled work at all exertional levels," and relied on the Grids, section 204.00, to find Marshall not disabled. AR 16.

The Commissioner argues that the ALJ properly relied on the Grids because Marshall's nonexertional limitations did not significantly erode the occupational base. The Commissioner further argues that even if vocational expert testimony were required, the ALJ satisfied such a requirement by obtaining a vocational expert's report analysis based on Marshall's "RFC, age, education, and work experience, and using Grids rule 204.00 as framework." JS 22.

Because this matter is being remanded for reconsideration of Dr. Myint's opinion, the ALJ is free to reassess the analysis at step five of the sequential analysis.

### E. Lay Witness Testimony

Marshall contends the ALJ improperly discounted the lay witness testimony and Third Party Function Report of his mother. He also contends the ALJ did not specifically indicate the testimony that he accepted or rejected.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). "When an ALJ discounts the testimony of lay witnesses, 'he [or she] must give reasons that are germane to each witness.'" *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (citation omitted).

Ms. Marshall testified that Marshall's medications help him, but Marshall could not work even with the medications because of his temper, mood swings,

and nervousness. AR 14, 55-56. Marshall stays at home by himself while she and her daughter are at work. AR 14, 56. Marshall cleans the house, does the dishes, takes out the trash, and sometimes cooks while he is home alone. AR 14, 56. Marshall does not have a driver's license because "[h]e didn't pass [the driving test] so he got frustrated and didn't want to do it ever again." AR 57.

In a Third Party Function Report, Ms. Marshall stated that Marshall makes his own meals and does chores around the house and in the yard during the day. AR 163. He has "broken" sleep. AR 164. He has no problem with his personal care, although he sometimes needs to be reminded to take his medication. AR 164-65. He has no friends and he thinks the neighbors are "out to get him." AR 167-68. His memory, ability to complete tasks, concentration, understanding, ability to follow instructions, and ability to get along with others are "very limited due to his mental illness." AR 168.

The ALJ considered the testimony of Ms. Marshall. He found her testimony "has usual maternal motivation and also financial," since she "would gain if the claimant was granted public support." AR 14. The ALJ erred in relying on Ms. Marshall's bias and interest in the case. "[R]egardless of whether they are interested parties, 'friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his or] her condition.'" *Valentine*, 574 F.3d at 694 (citation omitted). On the other hand, evidence that a lay witness "exaggerated a claimant's symptoms *in order* to get access to his disability benefits, as opposed to being an 'interested party' in the abstract, might suffice to reject that [person's] testimony." *Id.* (emphasis in original). The ALJ made no such finding.

On remand, the ALJ should reconsider the lay statements of Marshall's mother. The ALJ must either credit her statements or provide "germane" and legitimate reasons for rejecting the testimony.

## IV.
## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and remanded for further proceedings consistent with this opinion.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: December 3, 2012

ALICIA G. ROSENBERG
United States Magistrate Judge